UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION of MASSACHUSETTS, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL O. LEAVITT, Secretary of U.S. Department of Health and Human Services, in his official capacity, DANIEL SCHNEIDER, Acting Assistant Secretary for the Administration for Children and Families, in his official capacity, and DAVID H. SIEGEL, Acting Director of Office of Refugee Resettlement, in his official capacity, <br><br> Defendants. | Civil Action No.: <br><br> **COMPLAINT** |

Plaintiff American Civil Liberties Union of Massachusetts ("Plaintiff" or "ACLU of Massachusetts"), for its complaint in the above-captioned matter, alleges as follows:

**PRELIMINARY STATEMENT**

1. It is estimated that more than 14,000 individuals, predominately women, are trafficked into the United States each year. Human trafficking is an extreme form of labor exploitation where individuals are recruited or obtained and then forced to labor against their will through force, fraud, or coercion. Many trafficked women are physically or sexually abused by their traffickers or are forced to work in the sex trade. Human trafficking is a form of modern-day slavery.

2. Congress passed the Trafficking Victims Protection Act ("TVPA") to combat human trafficking and expand benefits and services for those who are victims of

severe forms of human trafficking. The federal government has recognized that its success in combating human trafficking domestically hinges on a victim-centered approach.

3. Under the TVPA, the federal government provides an array of services to these individuals, including medical services, to help them become self-sufficient. The Defendants, pursuant to their authority under the TVPA to distribute funds for such services, have provided a multi-million dollar contract to a religious organization, the United States Conference of Catholic Bishops ("USCCB"), to provide subgrants to organizations that directly serve trafficked individuals. In that contract, HHS permitted USCCB to impose its own religiously based substantive restrictions on the use of grant funds. Specifically, HHS permitted USCCB, based solely on USCCB's religious objections to contraception and abortion, to prohibit all subgrantees from using grant funds to pay for contraceptive and abortion referrals and contraceptives.

4. By permitting USCCB to impose its religiously based restrictions on the types of services trafficked individuals can receive with taxpayer funds, the Defendants have violated the Establishment Clause.

5. Plaintiff – whose members include taxpayers whose tax dollars finance the contract between the Defendants and USCCB – seeks, among other relief, an injunction ordering Defendants to ensure that the TVPA grant is implemented without the imposition of religiously based restrictions.

## JURISDICTION AND VENUE

6. This action arises under the First Amendment of the United States Constitution and presents a federal question within this Court's jurisdiction under Article

III of the Constitution and 28 U.S.C. § 1331.

7.  Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable powers of this Court.

8.  The Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412.

9.  Venue is proper in this judicial district under 28 U.S.C. § 1391(e).

## PARTIES

10. Plaintiff ACLU of Massachusetts is a nonprofit membership organization devoted to protecting the basic civil liberties embodied in the United States Constitution, including those liberties of religious belief and conscience safeguarded by the Establishment Clause of the First Amendment. The ACLU of Massachusetts is a statewide affiliate of the national American Civil Liberties Union and is domiciled in the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts. Members of the ACLU of Massachusetts pay federal taxes into the general revenues from which Congress appropriates funds under the TVPA. Plaintiff and its members object to, and are injured by, the use of federal tax dollars in a manner that is non-neutral with respect to religion pursuant to the TVPA.

11. Defendant Michael O. Leavitt is the Secretary of the United States Department of Health and Human Services ("HHS") and is responsible for the administration and oversight of the Department. Defendant Leavitt has authority over the Administration for Children and Families ("ACF"), a subdivision of HHS. By permitting USCCB to impose its religiously based restrictions on the types of services trafficked

individuals can receive with taxpayer funds, Defendant Leavitt has violated the Establishment Clause. Defendant Leavitt and his successors are sued in their official capacity.

12.     Defendant Daniel Schneider is the Acting Assistant Secretary for ACF. Defendant Schneider has authority over the Office of Refugee Resettlement ("ORR"), a subdivision of ACF. By permitting USCCB to impose its religiously based restrictions on the types of services trafficked individuals can receive with taxpayer funds, Defendant Schneider has violated the Establishment Clause. Defendant Schneider and his successors are sued in their official capacity.

13.     Defendant David H. Siegel is the Acting Director of ORR. By permitting USCCB to impose its religiously based restrictions on the types of services trafficked individuals can receive with taxpayer funds, Defendant Siegel has violated the Establishment Clause. Defendant Siegel and his successors are sued in their official capacity.

## FACTS GIVING RISE TO THIS ACTION

**A.     Human Trafficking**

14.     The federal government has estimated that between 14,500 and 17,500 individuals are trafficked in the United States on an annual basis.

15.     Human trafficking is a form of modern-day slavery. It occurs when adults are compelled, through force, fraud, or coercion, to engage in commercial sex or to provide other forms of labor.

16.     The vast majority of those who are trafficked into the United States are female.

17. Almost all women who are trafficked for prostitution are also violently assaulted.

18. Many women who are forced, defrauded, or coerced to act as prostitutes are also raped by traffickers, pimps, and acquaintances of traffickers and pimps.

19. Some women trafficked for other forms of forced labor are also raped or sexually abused by their traffickers.

20. Sexual and reproductive health problems are common among women who are trafficked.

21. Some women who have been trafficked become pregnant after being raped.

22. Moreover, sex trafficking plays a role in spreading sexually transmitted diseases, such as Human Immunodeficiency Virus (HIV). Indeed, women who have been trafficked for prostitution generally have a high incidence of HIV compared to the rest of the population.

23. Accordingly, victims of severe forms of human trafficking frequently need reproductive health care referrals and services to lead safe lives, become self-sufficient, and protect themselves and others. These services, and referrals to these services, include emergency contraception, condoms, and, in some cases, abortion services.

24. Denying reproductive health services, and referral for these services, can further victimize trafficked individuals.

25. For example, some traffickers prohibit trafficked women from accessing contraceptives, including condoms, and force trafficked women to carry a pregnancy to term.

26. Additionally, denying reproductive health services and referrals – particularly access to condoms – has public health consequences because of the risk of further transmission of sexually transmitted infections, including HIV.

### B. HHS's Grant to USCCB

27. To combat human trafficking, Congress passed the Trafficking Victims Protection Act ("TVPA"), 22 U.S.C. § 7105, in 2000, and reauthorized that Act in 2003, 2005, and 2008. *See* Trafficking Victims Protection Reauthorization Act of 2005, Pub. L. No. 109-164, 119 Stat. 3558 (2005); William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 112 Stat. 5044 (2008).

28. The TVPA mandates that victims of severe forms of trafficking, as defined by 22 U.S.C. § 7102, are eligible for federally-funded or -administered benefits and services. The TVPA specifically requires HHS to fund programs to provide assistance to victims of severe forms of trafficking who are in the United States. 22 U.S.C. § 7105(b).

29. The goal of HHS's domestic trafficking program, including its related grants, is to restore self-sufficiency to individuals who have been trafficked, so that they may rebuild their lives safely in the United States. These efforts "hinge[] on pursuing a victim-centered approach." *See Attorney General's Annual Report to Congress and Assessment of the U.S. Government Activities to Combat Trafficking in Persons Fiscal Year 2007*, at 3 (May 2008), available at http://www.usdoj.gov/ag/annualreports/tr2007/agreporthumantrafficing2007.pdf.

30. Upon information and belief, in 2002 ORR began providing grants of federal funds, pursuant to the TVPA, to non-governmental organizations ("NGOs") that

provided assistance to individuals in the United States who were victims of severe forms of trafficking.

31. Upon information and belief, ORR gave these block grants directly to the NGOs to be used by the NGOs to provide a range of services to assist trafficked individuals, including referrals for contraception and abortion, and for contraceptive services.

32. Upon information and belief, other funding streams authorized by the TVPA that are used to provide services to individuals in the United States who have experienced a severe form of trafficking have historically permitted, and continue to permit, use of funds for referrals for abortion and contraception, and payment for contraceptives.

33. Upon information and belief, NGOs used these funds to provide referrals for contraception and abortion, and to pay for contraceptives.

34. In March 2005, ORR, through its Director of Human Trafficking, sent a memorandum to Wade Horn, then-Assistant Secretary of ACF.

35. This memorandum sought ACF's approval to change the manner in which the grant program to NGOs was administered.

36. ORR proposed a "per capita" grant to organizations serving trafficked individuals. This new per capita grant of TVPA funds would be administered by a private entity.

37. Upon information and belief, ACF approved this new funding mechanism. Accordingly, on November 9, 2005, ORR released a Request for Proposals ("RFP") to find an entity to administer the grant. *See* Request for Proposals 06Y007781.

38. ORR's Request for Proposals did not include a prohibition on the use of TVPA funds for contraceptive and abortion referrals or contraceptives.

39. Upon information and belief, ORR anticipated that funds could be used for such purposes.

40. USCCB applied for the grant.

41. USCCB is a religious organization whose membership consists of the Catholic bishops in the United States, and USCCB carries out the bishops' mission. USCCB's purposes include, "unify, coordinate, encourage, promote and carry on Catholic activities in the United States" and "organize and conduct religious, charitable and social welfare work at home and abroad." *See* USCCB, http://www.usccb.org/whoweare.shtml (last visited Jan. 9, 2009).

42. Upon information and belief, USCCB is exempt from filing an annual tax return because the IRS considers USCCB an interchurch organization, a convention or association of churches, or an integrated auxiliary of a church.

43. USCCB responded to ORR's RFP by submitting, *inter alia*, a Technical Proposal.

44. The Technical Proposal indicated that USCCB, which does not directly serve human trafficking clients, would administer the grant by subgranting TVPA funds to NGOs that directly serve trafficked individuals.

45. USCCB's amended Technical Proposal, dated February 23, 2006, stated that the per capita stipend that it would provide to NGOs could be used for medical care and medicine.

46. The document also stated, however, that "as we are a Catholic organization, we need to ensure that our victim services funds are not used to refer or fund activities that would be contrary to our moral convictions and religious beliefs. Therefore, we would explain to potential subcontractors our disclaimer of the parameters within which we can work. Specifically, subcontractors could not provide or refer for abortion services or contraceptive materials . . . ."

47. After USCCB submitted its response to the RFP, HHS/ORR asked USCCB a number of questions related to their proposal.

48. One question asked USCCB to elaborate on the so-called "conscience exception," namely, USCCB's statement that it intended to prohibit NGOs from using TVPA grant funds for abortion and contraceptive referrals and services.

49. HHS/ORR asked, "Would a 'don't ask, don't tell' policy work regarding the exception? What if a subcontractor referred victims supported by stipend to a third-party agency for such services?"

50. USCCB responded by saying, "We cannot be associated with an agency that performs abortions or offers contraceptives to our clients. If they sign the written agreement [the subcontract], the 'don't ask, don't tell' wouldn't apply because they are giving an assurance to us that they wouldn't refer for or provide abortion service to our client using contract funding."

51. Despite this limitation on the use of TVPA grant funds, USCCB was awarded the grant in April 2006. *See* Contract HHSP23320062900YI.

52. The contract between USCCB and ORR provides that TVPA grant funds should be distributed to NGOs on a per capita basis. Each NGO should receive a set amount per client, plus reimbursement for certain expenses.

53. Under this contract, the NGOs may seek reimbursement for such services as health screenings and medical care, food, public transportation, and clothing.

54. The contract between USCCB and ORR, however, incorporates by reference USCCB's response to ORR's RFP, which includes the Technical Proposal (both the original and the amended version).

55. Therefore, by way of incorporation by reference, the final contract between USCCB and ORR incorporates USCCB's statement that because of its Catholic beliefs, USCCB will prohibit NGOs from using federal government funds administered by USCCB for abortion and contraceptive referrals and services.

56. Accordingly, ORR delegated to USCCB authority to impose religiously based restrictions on TVPA grant funds.

57. The subcontract agreements between USCCB and the NGOs explicitly prohibit the NGOs from using TVPA funds to provide "referral for abortion services or contraceptive materials."

58. USCCB distributes a Program Operations Manual ("POM") to the subgrantee NGOs.

59. Although the POM indicates that "[h]ealth care services are an appropriate use of program funding," the POM reiterates that "program funding cannot be used for abortion services or contraceptive materials. Subcontractors will not be reimbursed for these services."

60. The contract is now in its third year. USCCB has subgranted TVPA funds to NGOs directly serving individuals in the United States that have experienced a severe form of human trafficking.

61. The NGOs that receive subgrants from USCCB are located across the United States, including, upon information and belief, in Massachusetts.

62. Not all of the NGOs share USCCB's religious beliefs.

63. Not all of the clients the NGOs serve share USCCB's religious beliefs.

64. The contract between USCCB and ORR is for a maximum of $6 million per year, and can be renewed for up to five years.

65. The contract states that "the majority of funds provided under this contract (upwards of 80%) is anticipated to be used to provide services to victims of severe forms of trafficking and no more than 20% of the contract is to be used for non-victim services."

66. Upon information and belief, from April 2007 to April 2008, USCCB was awarded more than $3.5 million. Upon information and belief, from April 2006 to April 2007, USCCB was awarded $2.5 million.

67. Upon information and belief, in Fiscal Year 2006, USCCB retained $900,192, or almost 40% of the congressionally appropriated funds, for administering the grant, while only $1.6 million, or approximately 60%, was spent serving individuals who were trafficked.

68. The May 2008 Attorney General's Annual Report to Congress and Assessment of the U.S. Government Activities to Combat Trafficking in Persons informs Congress that ORR continued its contract with USCCB to provide services to victims of

severe forms of human trafficking, and that USCCB has entered into 93 subcontracts with NGOs in 125 locations to provide services to trafficking victims in their communities.

69. On December 10, 2008, Congress passed the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, and President Bush signed it into law on December 23, 2008.

## CAUSE OF ACTION

70. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 69.

71. Defendants have violated and continue to violate the Establishment Clause of the First Amendment by permitting USCCB to impose a religiously based restriction on the use of taxpayer funds.

## RELIEF REQUESTED

WHEREFORE Plaintiff, on behalf of its members, respectfully requests that the Court enter judgment in its favor and:

1. Declare, pursuant to 28 U.S.C. § 2201, that Defendants' actions, as set forth above, violate the Establishment Clause of the First Amendment to the United States Constitution;

2. Enter a permanent injunction ordering Defendants to ensure that the TVPA grant is implemented without the imposition of religiously based restrictions.

3. Award costs and fees for this action, including attorneys' fees;

4. Award nominal damages; and

5. Award such further relief as this Court deems appropriate.

Dated: January 12, 2009

Respectfully Submitted,

/s/ Sarah R. Wunsch_____
Sarah R. Wunsch, BBO # 548767
ACLU of Massachusetts
211 Congress Street, 3rd Floor
Boston, MA 02110
swunsch@aclum.org
Phone: 617-482-3170, ext. 323

Brigitte Amiri*
Rose A. Saxe*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY  10004
Phone: 212-549-2633
Fax: 212-549-2652

Daniel Mach*
Heather Weaver*
American Civil Liberties Union Foundation
915 15th Street, 6th Floor
Washington, DC 20005
Phone: (202) 675-2330
Fax: (202) 546-0738

*Motion for *pro hac vice* admission pending